UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CNA METALS WEST COAST, LLC, a Washington Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN METAL GROUP, INC., a California corporation, and HOWARD MISLE, an individual,<br><br>Defendants. | Case No.  C10-5894RJB<br><br>ORDER ON MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION |

This matter comes before the Court on Defendant's Motion to Dismiss For Lack of Personal Jurisdiction (Dkt. 7) and Plaintiff's Motion to Conduct Discovery (Dkt. 12). The Court has reviewed the pleadings filed in favor and opposition to the motion and the remainder of the record herein.

### I.  **FACTS AND PROCEDURAL HISTORY**

**A.  BACKGROUND FACTS**

According to the Complaint, on July 20, 2010, Defendant American Metal Group, Inc. ("AMG") and Plaintiff CNA Metals West Coast, LLC, ("CNA West") entered into an agreement for AMG to sell CNA West approximately one million pounds of "taint tabor." Dkt. 1, at 9. The Complaint alleges that taint tabor (a form of scrap metal), is more particularly defined by the Institute of Scrap Recycling

ORDER
Page - 1

Industries, Inc., as "clean old alloy aluminum sheet of two or more alloys, free of foil, venetian blinds, castings, hair wire, screen wire, food or beverage containers, radiator shells, airplane sheet, bottle caps, plastic, dirt, and other non-metallic items. Oil and grease not to total more than 1%. Up to 10% Tale permitted." Dkt. 1, at 9. The Complaint further alleges that on August 3, 2010, AMG and CNA West entered into another agreement for approximately 440,000 pounds of taint tabor. *Id.* CNA West then sold the all taint tabor to another company in Taiwan, Sigma Group ("Sigma"). *Id.*

CNA West asserts that these agreements arose when AMG's President, Howard Misle, called CNA West's Vice President, David Levin, on July 20, 2010 at Mr. Levin's office in Vancouver, Washington. Dkt. 13, at 1-2. AMG is based in San Jose, California. Dkt. 9, at 1. Mr. Misle and Mr. Levin have a history of business dealings through various business entities. *Id.* Mr. Levin moved from California to Washington in 2006, and the two men had continued their business relationship. *Id.*

In any event, during the July 20, 2010, conversation, Mr. Levin asserts that Mr. Misle told him that AMG had one million pounds of taint tabor to sell, and wanted to know if Mr. Levin knew of a potential buyer. *Id.* Mr. Levin states that after they concluded their call, he immediately began calling potential buyers. Dkt. 13, at 2. Mr. Levin states that he called Sigma and was quoted a price. *Id.* Mr. Levin states that he called Mr. Misle back and told him Sigma's offered price. *Id.* Mr. Levin asserts that Mr. Misle accepted Sigma's price and asked for a purchase order to be sent. *Id.* Mr. Levin sent a purchase order. *Id.* Mr. Misle then sent AMG's "Purchase Contract" to Mr. Levin. Dkt. 9, at 5.

According to AMG, it processes all of its products in San Jose, California, including the taint tabor at issue here. Dkt. 9, at 2. All of AMG's offices and employees are in California. *Id.*, at 1. The subject materials were also inspected and packaged in San Jose. *Id.*, at 2. The taint tabor was then transported by another company from San Jose to the Port of Oakland, and then on to it's final destination: Taiwan. *Id.*

The Complaint alleges that the two purchases arrived at Sigma's Taiwan location on August 23, 2010. Dkt. 1, at 9-10. According to the Complaint, after opening the shipment, "Sigma discovered that the metal shipped by [AMG] was substantially below taint tabor grade materials. While the outer layer of materials appeared to constitute taint tabor, when the bales were peeled back, the material was contaminated with unusable substances, such as rubber, wood, foam rubber, and steel." *Id.*, at 10. CNA

1  West alleges that it notified AMG that same day of the nonconformity, and AMG did not respond. *Id.*
2  The Complaint further alleges that Mr. Levin traveled to AMG in California and discussed the issue. *Id.*
3  Mr. Levin then traveled to Taiwan. *Id.* CNA West asserts that after a trip to Taiwan to inspect the
4  materials, CNA ended up returning around $335,000 to Sigma from the prepaid purchase price to account
5  for the below grade materials. *Id.* at 10-11.

6  CNA West makes claims for breach of contract against AMG, fraud against all defendants,
7  negligent misrepresentation against all defendants, intentional interference with an economic relationship
8  against all defendants, and "breach of contract and declaratory relief for setoff" against AMG. *Id.*

**B.   PROCEDURAL HISTORY**

This case was originally filed on November 8, 2010, in the Superior Court of Washington for the County of Clark. Dkt. 1, at 1. CNA West asserts in the Complaint that "the parties and subject matter of this lawsuit are subject to the jurisdiction of this Court, and venue is proper in Clark County, Washington pursuant to RCW 4.12.025(3)(c) and RCW 4.28.185." *Id.,* at 9. CNA West asserts further that "the actions and omissions alleged have occurred largely in Vancouver, Washington, where Plaintiff has suffered its damages and where Plaintiff conducted business transactions with Defendants and with its third party buyer in Kaohsiung, Taiwan." *Id.,* at 9. Defendants removed the case to this Court on December 8, 2010. *Id.*

**C.   PENDING MOTION**

Defendants now move for dismissal of this action for lack of personal jurisdiction, or in the alternative, move that the case be transferred to the Northern District of California. Dkt. 7. In support of their motion to dismiss, Defendants argue that this Court does not have general or specific personal jurisdiction over AMG or Mr. Misle. *Id.* Defendants move, in the alternative, for an order transferring this case to California. *Id.*

Plaintiff objects, and argues that this Court has jurisdiction over the Defendants. Dkt. 12. Plaintiff moves the Court for the opportunity to conduct jurisdictional discovery. *Id.* Plaintiff asserts that California is not the best venue for this case, and asks that this Court retain the matter. *Id.*

This opinion will first address Defendants' motion to transfer the case to the Northern District of California, then Plaintiff's motion for leave to conduct discovery on the issue of jurisdiction, and lastly,

Page - 3

Defendants' motion to dismiss for lack of personal jurisdiction.

## II. DISCUSSION

### A. MOTION TO TRANSFER CASE TO THE NORTHERN DISTRICT OF CALIFORNIA

"Under § 1404(a), the district court has discretion 'to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). This first issue to be decided is whether the Court has jurisidction to decide this motion because Defendants are challenging whether the Court has personal jurisdiction over them. The Ninth Circuit has not ruled on this issue. However, the Third Circuit has determined that even where a district court does not have personal jurisdiction over a defendant, the Court has discretion pursuant to § 1404(a) to decide the question of whether a case should be transferred. *U.S. v. Berkowitz*, 328 F.2d 358 (3rd Cir. 1964) (*citing Goldlawr, Inc. v. Heiman*, 369 U.S. 463, (1962)). The Third Circuit in *Berkowitz* noted that even though *Goldlawr* was interpretation of § 1406(a), "its rationale applies equally to § 1404(a), for these are companion sections, remedial in nature, enacted at the same time, and both dealing with the expeditious transfer of an action from one district or division to another." *Id*. This Court finds the Third Circuit's rationale persuasive and concludes that it does have the power to decide the question of transfer. The next issue, then, is whether transfer is appropriate. The court considers various factors in considering whether transfer to another venue is appropriate.

> For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum selection clause is a "significant factor" in the court's § 1404(a) analysis. We also conclude that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing.

*Id.,* at 498-99.

      1.  *Location Where Relevant Agreements were Negotiated and Executed and State that is Most Familiar with the Governing Law*

These factors are, at best, neutral. This case demonstrates the complexities of applying traditional notions of jurisdiction and venue to current business practices. Even taken in a light most favorable to the Plaintiff, the relevant agreement was negotiated over the phone in two states (maybe more depending on

1  where the Sigma representative was located). So, it is unclear where the relevant agreement was
2  negotiated. It is equally unclear, at this stage in the litigation, which contract applies, and so it is not
3  known where the agreements were executed. There does not appear to be a forum selection clause in any
4  pleading in the record. Parties also do not appear to be able to agree on whether California's or
5  Washington's laws apply. These factors are not helpful in the analysis.

      2.    *Plaintiff's Choice of Forum, Respective Parties' Contacts with the Forum and Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum*

Plaintiff's choice of forum weighs in favor of Washington as the forum. The Defendants' overall contacts with Washington are not that substantial. This factor weighs in favor of California as the forum. Defendants contacts relating to the Plaintiff's causes of action in Washington do not weigh heavily in favor of one forum or the other.

      3.    *Differences in the Costs of Litigation in the Two Forums*

The differences in the costs of litigating in Washington appear to be higher than the costs of litigating in California. This factor weighs in favor of California as the forum.

      4.    *Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses and Ease of Access to Sources of Proof*

These factors weigh heavily in favor of transferring the case to California. This Court does not have the power to require the attendance of non-party witnesses, such people who worked for the transportation company. Defendants have shown a potential need for these witnesses. Defendants have shown that a majority of the witnesses are in California. Moreover, the Defendants have shown that a majority of the physical evidence, including equipment used to make the taint tabor, which unlike documents can not be easily transported, is much more accessible in California.

      5.    *Conclusion*

In consideration of convenience and fairness, and pursuant to § 1404(a), this case should be transferred to the Northern District of California.

**B.    PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

Plaintiff has failed to show a need to conduct further discovery on the issue of jurisdiction. This motion (Dkt. 12) should be denied.

**C.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

1  "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (*citing* Fed.R.Civ.P. 4(k)(1)(A)). "Washington's long-arm statute, section 4.28.185 of the Washington Revised Code, permits the exercise of jurisdiction to the full extent of the due process clause of the United States Constitution." *Easter v. American West Financial*, 381 F.3d 948, (9th Cir. 2004)(*internal citations omitted*). Under the due process clause, for a court to exercise jurisdiction over a nonresident defendant, that defendant must have at least "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (*internal quotation marks and citation omitted*). Personal jurisdiction has been divided into to categories: general and specific jurisdiction. *Easter,* at 960.

1.  *General Personal Jurisdiction*

A nonresident defendant is subject to general jurisdiction only where that "defendant's contacts with a forum are 'substantial' or 'continuous and systematic.'" *Easter,* at 960 (*citing Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir.2000)). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger,* at 801.

This Court does not have general jurisdiction over the nonresident Defendants in this case. AMG is incorporated under the laws of the State of California, and has a registered agent in California. Dkt. 9, at 1. It has no offices or employees in Washington. *Id.* Although the Defendants have had prior dealings with the Plaintiff, AMG has never shipped a product to Washington state, nor have they traveled to Washington state. Dkt. 9, at 2. Plaintiff has failed to show that the Defendants's contacts with Washington are "substantial" or "continuous and systematic." *Easter*, at 960. This Court does not have general jurisdiction over Defendants.

2.  *Specific Personal Jurisdiction*

A three part test is used to determine if a court has specific personal jurisdiction over a nonresident defendant. *Schwarzenegger,* at 801. The plaintiff has the burden on the first two portions of the test, and the defendant must make a showing on the last portion. *Id.* A court has specific jurisdiction if:

> (1) the defendant has performed some act or consummated some transaction within the forum state or otherwise purposefully availed himself of the privileges of conducting activities in the forum,
> (2) the claim arises out of or results from the defendant's forum-related activities, and
> (3) the exercise of jurisdiction is reasonable.

*Easter*, at 960-61.

Even assuming Plaintiff makes a showing on the first two prongs of the test, here, the due process clause requires that the exercise of jurisdiction be reasonable. *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). The Defendants have shown that it would be unreasonable for the Court to exercise jurisdiction over them.

> In addressing the question of reasonableness, we consider seven factors: (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. No one factor is dispositive; a court must balance all seven.

*Panavision*, at 1323.

### a. Purposeful Interjection

Defendants' purposeful interjection in to the state of Washington here was not very substantial. Certainly these parties have had a lengthy business relationship, which apparently began while all parties resided in California. It also appears that Plaintiff sometimes would initiate the business contacts and send a purchase order, and sometimes Defendants would. It happens to be in this instance, that Defendants initiated the contact. Viewing the evidence in a light most favorable to Plaintiffs, this factor weighs somewhat in favor of Plaintiffs.

### b. Burden on Defendants

"Defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Panavision*, at 1323.

The burden on the Defendants in litigating in Washington is significant. It appears that many of the witnesses will have to travel. However, Defendants have properly pointed out that very little of the evidence and few witnesses are located in Washington. A large majority of the witnesses are in California. Further, Defendants note that the Court does not have subpoena power over the non-party witnesses. This factor weighs slightly in favor of Defendants.

    c. <u>Extent of Conflict with the Sovereignty of California and Washington's Interest in Adjudicating the Dispute</u>

These two factors balance one another out. It appears based on the parties' pleadings that there will be a dispute as to which contract applies and which state's law applies. Defendants appear to contend that California law applies. If that is found to be true, then California has a strong interest in resolving the dispute. Washington, conversely, has a strong interest in resolving the dispute if Washington law applies. Federal courts however, are not strangers to apply different states' laws. In this case, these factors are neutral.

    e. <u>Most Efficient Judicial Resolution of Controversy</u>

As stated above, California appears to be the forum which can more efficiently resolve this controversy. In addition to the witnesses and paperwork, the Defendants contend that the equipment used to make the product at issue will also be used as evidence. All of that equipment is in California. This factor weighs heavily for Defendants.

    f. <u>Importance of Forum to Plaintiff's Interest in Convenient and Effective Relief</u>

"In evaluating the convenience and effectiveness of relief for the plaintiff, we have given little weight to the plaintiff's inconvenience." *Panavision*, at 1324. It may be somewhat more costly and inconvenient for Plaintiffs to litigate in California, but the burden on them is relatively slight. *Id.* This factor is basically neutral, but perhaps slightly in favor of Defendants.

    g. <u>Existence of an Alternative Forum</u>

Defendants have further show the existence of an alternative forum. The Northern District of California is an alternative forum. This factor weighs in favor of Defendants.

   3. *Conclusion on Specific Jurisdiction*

Although it is a close question, this Court concludes that it does not have specific personal

jurisdiction over these Defendants. Defendants' purposeful interjection in to the state of Washington here was not very substantial, Defendants' burden in litigating in Washington is great, and the Northern District of California appears to be the forum which can more efficiently resolve this controversy. Defendants' motion to dismiss for lack of jurisdiction should be granted. Moreover, even if this Court did have either general or specific jurisdiction, as below, the motion to transfer the case to the Northern District of California should be granted.

### III.  ORDER

Therefore, it is hereby, **ORDERED** that:

- Plaintiff's Motion for Discovery (Dkt. 12) is **DENIED**;
- Defendant's Motion to Dismiss and/or in the Alternative to Transfer the Case to the Northern District of California (Dkt. 7) is **GRANTED**;
- This case is **TRANSFERRED** to the U.S. District Court for the Northern District of California.

The Clerk of the Court is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 14th day of January, 2011.

Robert J Bryan
United States District Judge